IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AVIVA USA CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> PHYLLIS R. STEVENS AND MARLA R. STEVENS, <br><br> Defendants. | Case No. <br><br><br> COMPLAINT |

The Plaintiff, Aviva USA Corporation ("Aviva"), states for its Complaint against the Defendants, Phyllis R. Stevens and Marla Stevens, as follows:

## INTRODUCTORY ALLEGATIONS

1.  Aviva is an Iowa corporation with its principal place of business in Des Moines, Iowa.

2.  Phyllis Stevens is an individual who resides in Polk County, Iowa.

3.  Marla Stevens is an individual who, on information and belief, is at least a part-time resident of Polk County, Iowa. Marla Stevens has publicly represented on a blog she has published on the internet and in campaign finance disclosures that she is a resident of Polk County, Iowa. Marla Stevens is the spouse of Polk County resident, Defendant Phyllis Stevens. Marla Stevens co-owns real property with Phyllis Stevens in Polk County, Iowa. On information and belief, Marla Stevens visits Polk County, Iowa from time to time. On the basis of these facts and the benefits Marla Stevens has received as a result of the conversion of funds alleged below, this Court has personal jurisdiction over Marla Stevens.

4.     This Court has subject matter jurisdiction of this matter because a federal question is presented under the Computer Fraud and Abuse Act, 18 U.S.C. §1030. Supplemental jurisdiction exists for Aviva's state law causes of action under 28 U.S.C. §1367.

5.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim in this case occurred in this district, and a substantial part of the property that is the subject of this action is situated in this district. *See* 28 U.S.C. §1391(a)(2).

## FACTUAL ALLEGATIONS

### Aviva's Business

6.     Aviva is a combined group of insurance companies that sells life insurance and annuity products in all 50 states. Aviva's headquarters are in Des Moines, Iowa.

7.     In 2001, Aviva acquired Indianapolis Life Insurance Company ("Indianapolis Life") of Indianapolis, Indiana. In 2004, Aviva merged and combined the computerized operating and data systems of Indianapolis Life into Aviva's own systems.

8.     Aviva's life insurance and annuity products are sold by agents. The agents are compensated by commissions they earn as a portion of the premiums paid by the insureds who purchase Aviva's life insurance and annuity products. Aviva has a department, called Agency Services, that manages relationships and contracts with agents and calculates and pays commissions earned by agents.

### Phyllis Stevens at Aviva

9.     Phyllis Stevens has been employed by Aviva or by its predecessor Indianapolis Life continuously since 1974. Until December 2003, Phyllis Stevens resided in Indiana. In

- 3 -

December 2003, Ms. Stevens moved to central Iowa and she has, since then, worked in Aviva's corporate headquarters in Des Moines.

10. At times pertinent to this lawsuit, Phyllis Stevens was employed as a Compensation Specialist. In that role she was responsible for using a computerized system at Aviva called FASAT to manage commission payments to insurance agents. While most commission payments are calculated and paid by FASAT automatically, a small percentage of agent commission payments need to be corrected and managed manually. Phyllis Stevens' job duties were to perform such management and correction of the amounts paid to agents.

### Phyllis Stevens' Fraudulent Scheme

11. Beginning no later than April 2004, Phyllis Stevens devised a scheme to convert and embezzle funds from Aviva by causing commission payments to be paid from Aviva into a bank account jointly held by her and by co-defendant Marla Stevens. Phyllis Stevens and Marla Stevens are neither one insurance agents and have never had any right to insurance commissions from Aviva.

12. At a time no later than April 2004, by using, misusing, and exceeding confidential rights of access and passwords to enter and use portions of Aviva's computer system, Phyllis Stevens altered the records in that system of an insurance agent named Michael S. Michael S. is an actual insurance agent who had been contracted with Aviva but whose relationship with Aviva terminated in 2003. Phyllis Stevens altered Michael S.'s records in Aviva's systems so that commission payments to Michael S. would not be sent to Michael S. but would instead be sent by electronic funds transfer ("EFT") to a bank account jointly held by Phyllis Stevens and Marla Stevens at a bank in Indianapolis, Indiana (the "Indiana bank account"). Phyllis Stevens

also altered the records regarding Michael S. in Aviva's system to cause mail regarding Michael S.'s agency relationship to be sent to Phyllis Stevens' home address in West Des Moines, Iowa rather than an address associated with the real Michael S.

13. Phyllis Stevens further modified the records in Aviva's FASAT system regarding the Michael S. account in another important way. Phyllis Stevens changed the Social Security Number in that account from Michael S.'s true Social Security Number to a Social Security Number that in truth belonged to A.R., a resident of Hammond, Indiana.

14. Phyllis Stevens' modifications to Michael S.'s agent record were unauthorized or exceeded Phyllis Stevens' authority because, while, Phyllis Stevens had authority to make adjustments to payments to agents, she did not have authority to make adjustments to identifying characteristics of agents such as their addresses, bank accounts, or other identifying information.

15. After altering the records in Aviva's system regarding Michael S. in these ways, Phyllis Stevens began making regular but unauthorized manual adjustments of commission payments in the FASAT system for Michael S.'s benefit. Based upon her knowledge of Aviva's systems, Phyllis Stevens was able to attribute commission income to Michael S. on various insurance and annuity products on which Michael S. had no involvement. Phyllis Stevens was able to do this without the true agents on those insurance and annuity products knowing about the commission payments to the Michael S. account. Phyllis Stevens was also able to do this without the owners of those insurance and annuity products knowing about the commission payments to Michael S.'s account.

16. By making regular manual commission adjustments in Aviva's FASAT system for the benefit of the Michael S. account, Phyllis Stevens built up a substantial credit balance in

the Indiana bank account. Phyllis Stevens and, on information and belief, Marla Stevens then withdrew the funds from the Indiana bank account for their own benefit.

17. In November 2005, Phyllis Stevens made further unauthorized changes to the Michael S. account in Aviva's FASAT system. Phyllis Stevens changed the name on the account entirely from that of Michael S. to that of Mark P. Mark P. is an actual insurance agent who at one time was contracted with Aviva, although Mark P. never wrote any business for Aviva.

18. From November 2005 forward, Phyllis Stevens continued her scheme of making unauthorized manual adjustments in Aviva's FASAT system, but her changes to Aviva's FASAT records now made it appear as though her manual adjustments were being paid for the benefit of Mark P. Just as before, the commission income Phyllis Stevens created for Mark P. was tied in Aviva's system to actual insurance and annuity products but in fact had no legitimate relationship to those products. Just as before, Phyllis Stevens' commission payments to Mark P. were made without the knowledge of the true agents and the true owners associated with those insurance and annuity products. Just as before, the commission payments for Mark P.'s benefit flowed into the Indiana bank account and were withdrawn from that account by Phyllis Stevens and, on information and belief, Marla Stevens. And, just as before, Mark P.'s commission account at Aviva bore the same stolen Social Security Number from A.R. of Hammond, Indiana.

19. In April 2006 Phyllis Stevens caused an additional unauthorized modification to what was now the Mark P. account at Aviva by changing and updating the mailing address on that account to a new home address for her. Because her attempt at changing the address was unauthorized, she was only partially successful in effecting the address change in the FASAT

system, and under false pretenses she coerced a coworker into completing the record modification for her.

20.     All told, Phyllis Stevens made more than 200 unauthorized manual adjustments through Aviva's FASAT system for agent commission transactions that were not actually earned and did not in truth occur (the "fictional commission payments"). Aviva has suffered substantial damages as a result of the fictional commission payments.

### The Rush to Drain Funds from the Indiana Bank Account

21.     On September 22, 2009, an Aviva employee working in the Agent Services area noticed by coincidence one of the fictional commission payments on a spreadsheet summarizing unrelated data. That employee notified a second Aviva employee about the anomalous commission payment. The second employee asked Phyllis Stevens about the commission payment, but Phyllis Stevens disclaimed knowledge of any error or impropriety. The second Aviva employee continued an investigation of the matter, however, and involved other employees in the Agency Services area to assist in the investigation.

22.     On the following morning, September 23, 2009, after additional investigation, certain supervisory Aviva employees spoke to Phyllis Stevens regarding the pattern of manual adjustments she had made regarding the Mark P. agent account. Phyllis Stevens continued to disclaim knowledge of any impropriety or wrongdoing. At the conclusion of the meeting, Aviva placed Phyllis Stevens on paid leave pending further investigation.

23.     Less than three and a half hours after the conclusion of the morning meeting at Aviva's Des Moines headquarters, Phyllis Stevens was at O'Hare Airport in Chicago, Illinois using a debit card to withdraw money from the Indiana bank account using an ATM machine.

Late in the afternoon on that same day, Phyllis Stevens appeared at a branch of her Indiana bank in or near Indianapolis seeking to obtain a large cashier's check and to withdraw a large sum of cash. Phyllis Stevens obtained both the cashier's check and the cash.

24.  On September 24, 2009, Phyllis Stevens traveled by cab to various branches of the Indiana bank in the Indianapolis area seeking to cash the cashier's check or obtain travelers checks. Because none of the branches had enough cash on hand to cash the cashier's check, Phyllis Stevens obtained cash from multiple branches for part of the sum represented by the check, yet she was still unable to cash the entire value of the check.

25.  Phyllis Stevens and Marla Stevens continue to hold money in the original Indiana bank account as well as in a second account at the same Indiana bank. On information and belief, Phyllis Stevens and Marla Stevens hold cash and other assets at other financial institutions.

26.  In addition to more liquid assets, Phyllis Stevens and/or Marla Stevens own two residential dwellings in Des Moines, Iowa, two residential properties in Indiana, and one dwelling in Florida.

### COUNT I - COMPUTER FRAUD AND ABUSE ACT
### (PHYLLIS STEVENS)

27.  Aviva realleges and incorporates by reference the allegations of paragraphs 1 through 26 above.

28.  Aviva's computer system and the individual computer through which Phyllis Stevens accessed that system are each a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2)(B).

29. By engaging in the conduct described above, Phyllis Stevens knowingly and with intent to defraud accessed a protected computer without authorization or exceeded her authorized access to Aviva's protected computers and, by means of that conduct, furthered her intended fraud and obtained something of value in violation of 18 U.S.C. §1030(a)(4).

30. As an actual and proximate result of Phyllis Stevens' conduct, Aviva suffered a "loss" within the meaning of 18 U.S.C. §1030(e)(11). That loss has totaled more than $5,000 in a one year period.

WHEREFORE, Plaintiff Aviva USA Corporation prays this Court for a judgment to be entered against Defendant Phyllis Stevens in an amount which will fully compensate Aviva for its monetary losses, interest, the costs of this action, and such further relief as this Court deems just.

## COUNT II -- CONVERSION (PHYLLIS STEVENS)

31. Aviva realleges and incorporates by reference the allegations of paragraphs 1 through 30 above.

32. In executing her scheme to cause commission payments to be paid from Aviva under false pretenses for her benefit, Phyllis Stevens wrongfully converted funds belonging to Aviva, thereby damaging Aviva.

33. Phyllis Stevens acted knowingly, willfully, recklessly, and/or maliciously with the intent to injure Aviva or in conscious disregard of the injury which would be done to Aviva by misappropriating Aviva's funds, thus entitling Aviva to punitive damages.

34. Phyllis Stevens' behavior is sufficiently in bad faith, vexatious, wanton, and oppressive so as to entitle Aviva to an award of common law attorney's fees.

WHEREFORE, Plaintiff Aviva USA Corporation prays this Court for a judgment to be entered against Defendant Phyllis Stevens in an amount which will fully compensate Aviva for its monetary losses, interest, court costs, attorney's fees, plus punitive damages and such further relief as this Court deems just.

## COUNT III - FRAUDULENT MISREPRESENTATION
## (PHYLLIS STEVENS)

35. Aviva realleges and incorporates by reference the allegations of paragraphs 1 through 34 above.

36. In connection with her procurement of commission payments from Aviva to a fictional agent and for her own benefit, Phyllis Stevens made representations of fact to Aviva regarding the identity of the fictional agent, the fictional agent's entitlement to commission income, and the identity of the true recipient of the commission monies.

37. Phyllis Stevens' representations to Aviva about the fictional commission payments were false.

38. Phyllis Stevens' representations to Aviva regarding the fictional commission payments were material to Aviva in Aviva's decision about whether to pay those commissions.

39. Phyllis Stevens knew her representations about the fictional commission payments were false.

40. Phyllis Stevens intended to deceive Aviva about the fictional commission payments.

41. Aviva acted in reliance on the truth of Phyllis Stevens' representations about the fictional commission payments and was justified in relying upon those representations.

42. Phyllis Stevens' false representations about the fictional commission payments are a proximate cause of Aviva's damages.

43. Aviva has been damaged by Phyllis Stevens' misrepresentations.

44. Phyllis Stevens acted knowingly, willfully, recklessly, and/or maliciously with the intent to injure Aviva or in conscious disregard of the injury which would be done to Aviva by misappropriating Aviva's funds, thus entitling Aviva to punitive damages.

45. Phyllis Stevens' behavior is sufficiently in bad faith, vexatious, wanton, and oppressive so as to entitle Aviva to an award of common law attorney's fees.

WHEREFORE, Plaintiff Aviva USA Corporation prays this Court for a judgment to be entered against Defendant Phyllis Stevens in an amount which will fully compensate Aviva for its monetary losses, interest, court costs, attorney's fees, plus punitive damages and such further relief as this Court deems just.

### COUNT IV -- FRAUDULENT NONDISCLOSURE
### (PHYLLIS STEVENS)

46. Aviva realleges and incorporates by reference the allegations of paragraphs 1 through 45 above.

47. Phyllis Stevens' employment position at Aviva involved a relationship of trust and confidence between her and Aviva that imposed upon Phyllis Stevens a duty to disclose to Aviva material information regarding the circumstances of payments Phyllis Stevens requested from Aviva. Phyllis Stevens was further under a duty to disclose to Aviva facts basic to the fictional commission payments because she knew that Aviva would make those payments under a mistake as to them and that Aviva, because of Phyllis Stevens' employment position with Aviva, would reasonably expect disclosure of the true facts regarding those transactions.

48. While under a duty to disclose material facts regarding the fictional commission payments, Phyllis Stevens knew that the agent to whom she directed those payments did not exist, knew that the commission payments were not based on any actual sale of any insurance products and had not been earned in any way, and knew that the commission payments were in fact being paid to an account for Phyllis Stevens' own benefit rather than for the benefit of any insurance agent.

49. While under a duty to disclose, Phyllis Stevens concealed and failed to disclose the facts described above to Aviva.

50. The undisclosed information was material to Aviva in making the fictional commission payments.

51. Phyllis Stevens knowingly failed to disclose the information described above to Aviva. Phyllis Stevens intended to deceive Aviva by withholding the information described above.

52. Aviva acted in reliance upon Phyllis Stevens' failure to disclose the information described above and was justified in such reliance.

53. Phyllis Stevens' failure to disclose information was a proximate cause of damage to Aviva.

54. Phyllis Stevens acted knowingly, willfully, recklessly, and/or maliciously with the intent to injure Aviva or in conscious disregard of the injury which would be done to Aviva by misappropriating Aviva's funds, thus entitling Aviva to punitive damages.

55. Phyllis Stevens' behavior is sufficiently in bad faith, vexatious, wanton, and oppressive so as to entitle Aviva to an award of common law attorney's fees.

WHEREFORE, Plaintiff Aviva USA Corporation prays this Court for a judgment to be entered against Defendant Phyllis Stevens in an amount which will fully compensate Aviva for its monetary losses, interest, court costs, attorney's fees, plus punitive damages and such further relief as this Court deems just.

## COUNT V -- UNJUST ENRICHMENT
## (PHYLLIS STEVENS AND MARLA STEVENS)

56.  Aviva realleges and incorporates by reference the allegations of paragraphs 1 through 55 above.

57.  Phyllis Stevens possesses assets as a result of the fictional commission payments for Phyllis Stevens' benefit. Phyllis Stevens has therefore been enriched by the receipt of a benefit.

58.  On information and belief, Marla Stevens possesses assets as a result of the fictional commission payments for the benefit of Phyllis Stevens. Marla Stevens has therefore been enriched by the receipt of a benefit.

59.  The enrichment of Phyllis Stevens and Marla Stevens has been at the expense of Aviva.

60.  It is unjust to allow Phyllis Stevens and Marla Stevens to retain the benefit they have received from Aviva under the circumstances described herein.

61.  Phyllis Stevens' behavior is sufficiently in bad faith, vexatious, wanton, and oppressive so as to entitle Aviva to an award of common law attorney's fees.

WHEREFORE, Plaintiff Aviva USA Corporation prays for judgment against Defendants Phyllis Stevens and Marla Stevens in an amount which will fully compensate Aviva for the unjust enrichment Phyllis Stevens and Marla Stevens have received as well as interest, court

costs, an award of attorney's fees from Phyllis Stevens, and such other relief as this Court deems just.

### COUNT VI -- PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (PHYLLIS STEVENS AND MARLA STEVENS)

62.  Aviva realleges and incorporates by reference the allegations of paragraphs 1 through 61 above.

63.  Some or all of the proceeds of the money converted from Aviva are now held in checking, savings, money market, investment, depository, or other accounts of Phyllis Stevens and/or Marla Stevens.

64.  Phyllis Stevens and/or Marla Stevens have purchased various assets with money Phyllis Stevens converted from Aviva and the Defendants own or possess those assets at this time.

65.  If not restrained from accessing their accounts and/or liquidating, selling, transferring, or alienating their assets, Phyllis Stevens and/or Marla Stevens will, on information and belief, remove funds from their various accounts, place them beyond Aviva's reach, and will sell, transfer, alienate, and otherwise dissipate their assets.

66.  On information and belief, Phyllis Stevens and Marla Stevens possess insufficient assets to pay any judgment Aviva would obtain pursuant to Counts I through V above unless restrained from selling, transferring, alienating, or dissipating the assets and accounts traceable to Phyllis Stevens' fraud.

67.  If Phyllis Stevens and/or Marla Stevens remove money from any of their accounts or sell, transfer, alienate, or dissipate any of their assets, such that Aviva is unable to recover the funds belonging to Aviva, Aviva will be greatly or irreparably injured.

68. If Phyllis Stevens and/or Marla Stevens remove money from any of their accounts or sell, transfer, alienate, or dissipate any of their assets, the Defendants will have committed an act violating Aviva's rights respecting the subject of this action and tending to make a judgment in Aviva's favor ineffectual.

69. Aviva is accordingly entitled to a preliminary and permanent injunction to restrain Phyllis Stevens and Marla Stevens from removing assets from any account or from selling, transferring, alienating, or dissipating any assets composed of, including, or having been obtained with any funds belonging to Aviva.

70. Aviva further requests that a temporary restraining order be entered without notice because of the emergency nature of this situation and because of the speed with which Phyllis Stevens and/or Marla Stevens could remove money from accounts or sell, transfer, alienate, or dissipate assets in which Aviva has a rightful interest. It now appears plain that Phyllis Stevens and/or Marla Stevens are aware that Aviva has discovered Phyllis Stevens' fraud, and Phyllis and/or Marla are in a rush to divert or hide assets to place them out of Aviva's reach. Aviva will endeavor to give notice of this action and any order of this Court to Phyllis Stevens and Marla Stevens at its earliest opportunity.

71. Phyllis Stevens' behavior is sufficiently in bad faith, vexatious, wanton, and oppressive so as to entitle Aviva to an award of common law attorney's fees.

WHEREFORE, Plaintiff Aviva USA Corporation prays this Court for an order entering a temporary restraining or and a preliminary and permanent injunction restraining Phyllis Stevens and Marla Stevens from doing any of the following:

- 15 -

a. Withdrawing or transferring funds residing in any checking, savings, money market, investment, or depository account into which any funds improperly converted from Aviva or traceable to funds improperly converted from Aviva have been directly or indirectly deposited; and

b. Selling, transferring, alienating, or dissipating any liquid or illiquid asset which constitutes, or was purchased or obtained in whole or in part with, funds traceable to any funds that have been improperly converted from Aviva; and

c. Pledging, mortgaging, encumbering, or otherwise subjecting to any lien or security interest any account or asset which is described in subpoints a or b immediately above.

Plaintiff Aviva USA Corporation further prays this Court to enter an order awarding it its court costs, an award of attorney's fees against Phyllis Stevens, and such further relief as this Court deems just.

- 16 -

BELIN LAMSON McCORMICK ZUMBACH
FLYNN, A Professional Corporation

By _____
   Mark E. Weinhardt           AT0008280
   David Swinton               AT0007749
   Holly M. Logan              AT0004710
   Christopher McDonald       AT0005075

666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 283-4610
Facsimile: (515) 558-0610
meweinhardt@belinlaw.com
dmswinton@belinlaw.com
hmlogan@belinlaw.com
clmcdonald@belinlaw.com

ATTORNEYS FOR PLAINTIFF

(00506477).DOC